IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS


MICHAEL REID,

      **Plaintiff,**

**v.**

UNITED STATES POSTAL SERVICE,

      **Defendant.**                          **Case No. 05-cv-294-DRH**

<u>**MEMORANDUM & ORDER**</u>


**HERNDON, District Judge:**


## I. <u>INTRODUCTION & FACTUAL BACKGROUND</u>

      Pending before the Court in this case are the two following motions: (1) Plaintiff's Motion to Conduct Discovery Prior to Ruling on Summary Judgment (Doc. 24) and (2) Defendant's Motion for Summary Judgment (Doc. 21). Along with the summary judgment motion, defendant United States Postal Service ("USPS") filed a supporting memorandum (Doc. 22). Plaintiff Michael Reid filed his "Preliminary Response" to the summary judgment motion (Doc. 23), asserting that he is unable to adequately respond without being allowed to conduct reasonable discovery – hence, the need for Plaintiff's Motion to Conduct Discovery, filed pursuant to FEDERAL RULE OF CIVIL PROCEDURE 56(f).

      Plaintiff is an individual who brought suit against Defendant pursuant

to **5 U.S.C. § 552** to request that the Court issue an Order requiring Defendant fully

comply with Plaintiff's Freedom of Information Act ("FOIA") requests (Doc. 1).

Plaintiff first submitted a FOIA request for records from USPS in a letter, dated

January 12, 2005 (hereinafter "FOIA Letter" or "FOIA request") (Doc. 23, Ex. A, ¶ 2

and Doc. 22, Attachment A - Declaration of Christopher Bernaky, Ex. 1).  Plaintiff's

FOIA Letter requested Defendant provide the following documents:

> (1)   All PS Form 3602-R for permit 135 [for] the month of October
> 2004, located at, and/or originating at the Blue Island, Illinois
> post office; and
>
> (2)   All postage statements [for] permit 135 for the month,[1] from Blue
> Island, Illinois; and
>
> (3)   All PS Form 1412 for Permit 135 for the month of October 2004,
> located at, and/or originating at the Blue Island, Illinois post
> office.

The holder of permit 135 is a company called TC Marketing.  Form 3602-R is a

postage statement used for standard mail.  In his FOIA Letter Plaintiff also agreed

to pay "up to $500.00 for his request" and explained he was not "seeking these

documents for a commercial purpose" (*Id.*).  However, Plaintiff did request either a

waiver or reduction of fees if Defendant complied with his FOIA request.

In his Complaint, Plaintiff alleges that because Defendant had not

responded to his FOIA Letter, on February 9, 2005, Plaintiff telephoned Postmaster

---

[1]   It appears Plaintiff omitted the month in this part of the request, so Defendant assumed
it should be read to mean for the month of October – the same as the other two parts of the
request.  Plaintiff has not stated otherwise in his briefings.  Therefore, the Court also interprets
this part of the request to read as "for the month of October 2004."

Christopher Bernaky at the Blue Island, Illinois post office to inquire about his FOIA request (Doc. 1, ¶ 5). Plaintiff further alleges that the postmaster claimed he was not aware of the FOIA request, so Plaintiff subsequently faxed a copy of his FOIA Letter to the Postmaster on February 10, 2005 (*Id*.). Plaintiff alleges that he again telephoned the Postmaster on February 17, 2005, to inquire about his FOIA request and was told that it was being denied because the permit holder, TC Marketing, had objected to releasing such documents (*Id*. at ¶ 6). When asked for a copy of the permit holder's objection letter, Plaintiff asserts that the Postmaster refused (*Id*.). Construing the telephone conference as a denial of his request, Plaintiff then filed an appeal with the General Counsel of the Post Office in a written letter dated February 17, 2005 (*Id*. at ¶ 7, *see also* Doc. 23, Ex. A, ¶¶ 4 - 5 and Doc. 22, Ex. 3 to Bernaky Decl.).

The Postmaster received written objection from TC Marketing in a letter dated February 14, 2005, from Joseph M. Sperlin, President of TC Marketing (Doc. 22, p. 4).[2] He then formally responded to Plaintiff's FOIA Letter, in a letter dated February 17, 2005 (hereinafter the "Denial Letter"), denying Plaintiff's request (Doc. 22, Ex. 2 to Bernaky Decl.). The Denial Letter stated that Plaintiff's FOIA request was exempt from disclosure under FOIA Exemptions 3 and 4 (*Id*.). Continuing, the Denial Letter explained that Exemption 3 "applies to information that is exempt from

---

[2] Defendant has not attached Sperlin's letter, as it apparently believes Plaintiff is not entitled to this document pursuant to his FOIA request. However, Defendant stated in its summary judgment motion that it believes Mr. Sperlin would sign a declaration regarding his objection to Plaintiff's FOIA request (Doc. 22, p. 17).

disclosure by another federal law, and is invoked in conjunction with **39 U.S.C. § 410(c)(2)**, the Postal Reorganization Act, which protects information of a commercial nature, which under good business practice would not be disclosed" (*Id.*). Exemption 4 pertained to " 'trade secrets, or privileged or confidential commercial or financial information, obtained from any person' " (*Id.*).

Plaintiff states that he received the Denial Letter on February 22, 2005, and proceeded to file a supplemental appeal to the General Counsel of the Post Office in a letter dated that same day, based upon this new written denial of his FOIA request (Doc. 23, Ex. A, ¶ 6, and Doc. 22, Attachment F). Under FOIA, an agency has twenty days to respond to a request under the Act, including appeals (excluding weekends and legal public holidays). Plaintiff claims he received no response within this time-period, to which Defendant admits "more than twenty days elapsed before the agency responded to either of Plaintiff's appeal letters" (Doc. 22, p. 5).

Plaintiff thereby filed a Complaint, commencing suit against Defendant on April 5, 2005 (Doc. 1). On May 10, 2005, Chief Counsel for the Customer Protection and Privacy at Postal Service Headquarters, Anthony Alverno, responded to Plaintiff's appeals in a letter (Doc. 22, Attachment G). Mr. Alverno upheld the Postmaster's denial of Plaintiff's requests pursuant to Exemptions 3 and 4. Plaintiff notes that Mr. Alverno's response was sometime "after summons had been received by USPS . . ." (Doc. 23, Ex. A, ¶ 7).

Shortly after commencing this action, Plaintiff served Defendant with certain discovery requests. This prompted Defendant to file an Emergency Motion

Page 4 of 22

for Protective Order to Stay Discovery (Doc. 12), to which Plaintiff filed a Motion to Strike (Doc. 13). The Court granted Defendant a Protective Order and denied Plaintiff's Motion to Strike, in an Order (Doc. 19) issued by Magistrate Judge Wilkerson. Plaintiff appealed the Magistrate Judge's ruling (Doc. 20). Prior to the disposition of Plaintiff's appeal, Defendant filed its Motion for Summary Judgment (Doc. 21) and Plaintiff filed his Motion for Discovery Prior to Ruling on the Summary Judgment Motion (Doc. 24). The same day, Plaintiff also filed his "Preliminary" Response to Defendant's Motion for Summary Judgment (Doc. 23). Defendant filed an opposing Response to Plaintiff's Discovery Motion (Doc. 28).

The District Judge affirmed the Magistrate Judge's ruling (Doc. 27), finding that in a FOIA case, a court has discretion to limit discovery prior to a defendant's filing of a summary judgment motion (Doc. 27, p. 4). Moreover, in a FOIA case, an agency has the right to file a motion for summary judgment to demonstrate that it has reasonably conducted a search based upon a plaintiff's request and has either produced all relevant documents or has legitimate reason for withholding such documents (Doc. 27, p. 4; *see also **Liverman v. Office of Inspector General**, 139 Fed. Appx. 942, 945 (10th Cir. 2005)*). The agency's summary judgment motion must be supported by affidavit (typically called a "Vaughn Index"), which the court may presume was made by the agency in good faith (*Id.*). Ultimately, if the agency's submissions or reasons for withholding seem adequate and made in good faith from the face of the briefings, a district court may elect to award summary judgment in favor of the agency without need for discovery (*Id.*).

Practically speaking, if the court allowed a plaintiff to discover certain documents an agency was attempting to withhold pursuant to a FOIA exemption - it would render meaningless both the purpose of a plaintiff's lawsuit and also the agency's right to withhold such documents.  Because Plaintiff did not show reason to overcome the presumption of the good faith accorded Defendant's Vaughn Index, nor did he demonstrate why the claimed exemptions did not apply to the denial, the Court affirmed the Magistrate Judge's ruling granting Defendant a Protective Order to stay discovery (*Id.*).  The Court also indicated that it would determine Plaintiff's Motion to Conduct Discovery Prior to Ruling on Summary Judgment Motion (Doc. 24), made pursuant to **Rule 56(f)** of the **FEDERAL RULES OF CIVIL PROCEDURE**, at a later date (*Id.* at 6).

## II. ANALYSIS

### A. LEGAL STANDARD

#### 1. FEDERAL RULE OF CIVIL PROCEDURE 56(f)

**Rule 56(f)** states as follows:

> Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

When ruling on discovery matters, a district court is afforded wide discretion. ***Becker v. IRS***, **34 F.3d 398, 406 (7th Cir. 1994)(citations omitted)**. Determining

that **Rule 56(f)** discovery is unnecessary before ruling on summary judgment motion in a FOIA case is not reversible error if a district court determines the agency's search and/or Vaughn Index was reasonable and denial of discovery did not prejudice the plaintiff. *Id.*

    2.    **FOIA and Summary Judgment**

        FOIA was enacted for the general purpose of providing the public with access to government agency documents, promoting full agency disclosure. ***See, e.g.,*** **5 U.S.C. § 552;** ***Solar Sources, Inc. v. United States*****, 142 F.3d 1033, 1037 (7th Cir. 1998)(citing** ***NLRB v. Robbins Tire & Rubber Co.*****, 437 U.S. 214, 242 (1978));** ***Carlson v. United States Postal Service*****, No. C-03-04113-RMW, 2005 WL 756583 at \*2 (N.D. Cal. Mar. 31, 2005);** ***Nat'l Western Life Ins. Co. v. United States*****, 512 F. Supp. 454, 457 (N.D. Tex. 1980)(citations omitted)**. Information and documents subject to a FOIA are only allowed to be withheld by a government agency if found to fit within any of the nine exemptions defined within **5 U.S.C. § 552(b)(1)-(9)**. The burden of proof rests upon the government agency to demonstrate that it was justified in determining that any such requested information and/or documents fall within a particular FOIA exemption. ***Becker*****, 34 F.3d at 402 (citing 5 U.S.C. § 552(a)(4)(B))(other citations omitted);** ***Solar Sources*****, 142 F.3d at 1037 (citing** ***Patterson v. IRS*****, 56 F.3d 832, 836 (7th Cir. 1995))**. All claimed FOIA exemptions must be narrowly construed, with a policy generally favoring disclosure. ***Id.* (citations omitted)**.

In order to meet its burden of proof, the government agency can rely on a declaration or affidavit, which is often referred to as a "Vaughn Index," named after the case ***Vaughn v. Rosen*, 484 F.2d 820 (D.C. Cir. 1973), *cert. denied*, 415 U.S. 977 (1974)**.  Although there does not seem to be a particular format for a Vaughn Index, the content should generally consist of reasonably detailed descriptions of the withheld documents or information with corresponding facts to show why the documents or information falls within the claimed FOIA exemption(s).  ***Kimberlin v. Dep't of Treasury*, 772 F.2d 204, 210 (7th Cir. 1985)(quoting *Stein v. Dep't of Justice & FBI*, 662 F.2d 1245, 1253 (7th Cir. 1981))**.  A district court may presume the government agency's Vaughn Index was made in good faith.  ***SafeCard Serv., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991)(citation omitted)**.

As long as the government agency is able to demonstrate that it conducted a reasonable search pursuant to a plaintiff's FOIA request and withheld documents or information properly fall within the claimed FOIA exemption(s), a district court can elect to award summary judgment in favor of the government agency without need for discovery.  ***Becker*, 34 F.3d at 406 (holding that district court judge did not abuse discretion in denying discovery prior to granting agency's motion for summary judgment when judge concluded agency affidavit and index was sufficient); *Liverman*, 139 Fed. Appx. at 945 ("[D]iscovery relating to the agency's search and the exemptions it claims for withholding records generally is unnecessary if the agency's submissions are adequate on**

**their face.")(internal quote omitted)**. Accordingly, whether a document or information fits within the claimed FOIA exemption(s) "is a matter of law, upon which the district court is entitled to no deference." ***Wickwire Gavin, P.C. v. United States Postal Service*, 356 F.3d 588, 591 (4th Cir. 2004)(citation omitted)**. Therefore, summary judgment generally tends to be the appropriate vehicle to determine a plaintiff's claims brought pursuant to FOIA.

**B.    PLAINTIFF'S RULE 56(f) MOTION**

In his **Rule 56(f)** Motion to Conduct Discovery Prior to Ruling on Summary Judgment Motion (Doc. 24), Plaintiff does not offer any new proposed written discovery he feels is necessary in order for him to adequately respond. Instead, he tenders the exact same written discovery that was the subject matter behind Defendant's Emergency Motion for Protective Order to Stay Discovery (Doc. 12). As recounted earlier in this Order, the Magistrate Judge granted Defendant's Motion and issued a Protective Order staying Defendant's obligation to respond to Plaintiff's written discovery, finding that "Plaintiff may not seek discovery prior to the filing of a motion for summary judgment [in a FOIA case] and thereafter only if he makes a showing of bad faith or provides other tangible evidence (*see* Doc. 19).

Plaintiff thereafter appealed the Magistrate Judge's decision to the District Court Judge.  The District Court Judge affirmed the Magistrate Judge's holding (Doc. 27).   Given Defendant's burden of showing that its search for documents responsive to Plaintiff's FOIA request was adequate and that withheld

documents fall within a claimed exemption, discovery in this regard is unnecessary if Defendant's submissions are "adequate on their face." ***Carney v. United States Dep't of Justice*, 19 F.3d 807, 812 (2d Cir. 1994)**.   This is especially true considering Plaintiff tenders the same proposed written discovery the Court previously deemed unnecessary *twice*.  While the Court understands Plaintiff feels restricted, the nature of the FOIA case differs somewhat from other civil cases, and the Court believes it can sufficiently rule upon the summary judgment motion without further evidence or response from Plaintiff.  Therefore, Plaintiff's **Rule 56(f)** Motion (Doc. 24) is **DENIED**.

## C.   DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant has filed its Motion for Summary Judgment (Doc. 21), stating it is entitled to summary judgment in its favor "because it has performed a proper search in response to Plaintiff's FOIA request, has not released any of the records requested and has preserved their confidentiality subject to valid FOIA exemptions" (Doc. 22, p. 1).   Defendant has attached its Vaughn Index as Exhibit 4 to the Declaration of Christopher F. Bernaky, Postmaster for the Blue Island, Illinois, Post Office (Doc. 22, Attachment A).   Defendant denied producing any responsive documents pursuant to Plaintiff's FOIA request, stating all such documents or information was exempted from FOIA under Exemptions 3 and 4.  The Court will analyze whether Exemptions 3 and 4 apply to Plaintiff's FOIA request in order to

justify Defendant's denial of the request.[3]

### 1.    Exemption 3

Exemption 3 of FOIA exempts from disclosure documents and information covered by statute, provided that the statute "(A) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue, or (B) establishes particular criteria for withholding or refers to particular types of matters to be withheld." **Carlson, 2005 WL 756583 at \*2 (citing 5 U.S.C. § 552(b)(3))**.  Defendant claims that under the Postal Reorganization Act, the Postal Service is subject to FOIA under **39 U.S.C. § 410(b)(1)** (Doc. 22, p. 11).  Defendant explains, however, that under this statute, FOIA disclosure requirements do not apply to "information of a commercial nature, including trade secrets, whether or not obtained from a person outside the Postal Service, which under good business practice would not be publicly disclosed." **39 U.S.C. § 410(c)(2)**.  This provision is commonly known as the "good business exception," enacted because Congress intended the Postal Service to " ' operate more like a private business than a governmental agency.' " **Wickwire, 356 F.3d at 592 (citing Nat'l Western, 512 F.**

---

[3]    The Court shall consider Plaintiff's "Preliminary Response" as his actual "Response" in light of the fact that Plaintiff did not previously seek leave of the Court to file a preliminary response in addition to a subsequent revised response.  Moreover, Plaintiff's "Preliminary Response" is premised on the supposition that he will be entitled to conduct further discovery based on either his objection of the Magistrate Judge's denial of Plaintiff's Motion to Strike Defendant's Protective Order or his Motion to Conduct Discovery Prior to Ruling on Summary Judgment (Rule 56(f) Motion) or both.  Considering the fact that the Court has previously affirmed the Magistrate Judge's ruling and, in this Order, denies Plaintiff's Rule 56(f) Motion, there appears to be nothing of further merit that Plaintiff could use to supplement/revise his "Preliminary Response," nor has Plaintiff shown as much.

Supp. at 462 and *Loeffler v. Frank*, 486 U.S. 549, 556 (1988)).

The good business exception has been found to qualify under subsection (B) of Exemption 3 as a statute that provides particular criteria for withholding requested information under FOIA. In other words, it provides a sufficiently definite standard. ***See Carlson,* 2005 WL 756583 at \*3 (citations omitted)**. Therefore, it is a proper standard to determine whether Defendant was justified in withholding information requested by Plaintiff under FOIA for the reason that it would not be considered "good business practice" to disclose it.

Whether an action is considered a good business practice can be "ascertain[ed] by looking to the commercial world, management techniques, and business law, as well as to the standards of practice adhered to by large corporations." ***Nat'l Western,* 512 F. Supp. at 459.** Additionally, the determination of whether information of a commercial nature is done regardless of who the plaintiff is or what use the plaintiff may make of such information. ***Id.* at 460**.

Plaintiff has made a FOIA request for TC Marketing's postage statements and also Defendant's financial statements. Specifically, Plaintiff requested: (1) TC Marketing's PS Forms 3602-R for the month of October, 2004, located at, and/or originating at the Blue Island, Illinois post office, (2) any other postage statements pertaining to TC Marketing for the month of October, 2004, located at, and/or originating at the Blue Island, Illinois post office, and (3) all PS Form 1412 for TC

Marketing for the month of October, 2004, located at, and/or originating at the Blue Island, Illinois post office.

Defendant argues that releasing a permit holders postage statements is not considered "good business practice" as these statements "have traditionally been treated as sensitive, commercial business information because they reveal mailing patterns of particular customers" (Doc. 22, p. 13). Further, Defendant asserts that TC Marketing specifically objects to the disclosure of its postage statements pursuant to Plaintiff's FOIA request (*Id*. at 13-14). Plaintiff contends that the fact that this information has already been disclosed to the public pursuant to the Illinois State Board of Elections campaign disclosure requirements, essentially renders Defendant's arguments as moot (Doc. 23, p. 5 and Ex. B).

In its Vaughn Index, Defendant explains that a PS Form 1412 is a Daily Financial Report used to summarize the business conducted at the close of each business day by a particular Post Office and is not prepared for individual permits (Doc. 22, Ex. 4, p. 3 to Attachment A). Further, because the PS 1412 "describes how the Postal Service and a particular post office conduct its daily financial transaction . . . [i]t has long been treated as commercially sensitive information of the Postal Service . . . and would not be consistent with good business practice to release it to outside parties" (*Id*.). Basically, Defendant believes disclosure of a PS 1412 would allow its competitors to view proprietary information regarding the way the Postal Service conducts its business, and should thereby also be exempt from release under Exemption 3. Plaintiff does not appear to address Defendant's arguments regarding

the request for the PS 1412s. '

      **a.**    **Postage Statements**

Defendant's Vaughn Index explains that a PS Form 3602 is commonly referred to as a "Postage Statement" (Doc. 22, Attach. A, Ex. 4, p. 1). Although there are 20 versions of this form, they all have six major sections: (1) Mailer Information Section, (2) Mailing Information Section, (3) Postage Computation Section; (4) Certification Section; (5) USPS Use Only Section, and (6) Reverse Side of Form Section (*Id.*). Plaintiff requested disclosure of a PS Form 3602-R, which is used as a postage statement for regular rate (as opposed to non-profit) standard class mail. However, Defendant notes that "the vast majority of statements processed for Permit 135 [TC Marketing] last October, 2004 were on PS Form 3602-N, Non-Profit Standard Class Letters and Flats paid for by permit imprint" (*Id.*). However, as Plaintiff also requested "all postage statements" for TC Marketing, PS Form 3602-N is then within the scope of Plaintiff's request.

In support of Plaintiff's counter argument that such information is already required under Illinois state law to be publicly disclosed, Plaintiff has attached copies of internet web page printouts (Doc. 23, Ex. C). These web printouts are off of the Illinois State Board of Election's website (the "website"), which allows the public to search its database to see candidate expenditures. It also allows the public to perform a database search based on the entity receiving candidates expenditures. Plaintiff has attached as Ex. C to his "Preliminary Response" a copy of the printout from the website showing the search results for campaign

expenditures made for TC Marketing for the years 2000-2004. The search results list the date and amount of each expenditure and also the political group that made the expenditure. Plaintiff has also attached as Ex. D to his "Preliminary Response" a copy of an Expenditure Detail Report for TC marketing, also pulled off of the website, showing the same type of information and including a category listing the purpose of the expenditure.

The Court will review each section of the PS Form 3602 to determine whether the information listed on such form would fall under Exemption 3.

**Section 1** - Defendant's Vaughn Index indicates that this section lists the mailing information of the permit holder. Under Section 4-4 of the Postal Service's Guide to Privacy and FOIA, the name and address of a permit holder is considered public information and can therefore be disclosed. However, this section also lists the mailing information of the mailing agent, if different from the permit holder, and the mailing information of the individual or organization on whose behalf a mailing is prepared. While Plaintiff certainly makes a good point that Illinois political organizations using TC Marketing for campaign purposes have to make this information known to the public, Plaintiff does not take into account that TC Marketing's clients may not only consist of Illinois political organizations. Therefore, disclosure of TC Marketing's postage statements (PS Form 3602s) for October, 2004, may reveal a more complete client list separate and apart from the client list that can be derived from Expenditure Reports on the Website. Also, TC Marketing may use another organization as its mailing agent, which could be considered proprietary

information.  As such, the Court believes it would not constitute good business practice for Defendant to disclose TC Marketing's clients or mailing agents to the public, whether or not Plaintiff made this FOIA request for a commercial purpose, as it may lead TC Marketing to use one of Defendant's competitors not subject to FOIA requirements.   Therefore, the Court finds that the portion of Section 1 listing the mailing information of the individual or organization on whose behalf a mailing is prepared falls under Exemption 3.  Further, because Plaintiff already knows the holder of Permit 135 is TC Marketing, disclosure of this information is moot.

**Section 2** - Defendant's Vaughn Index states that this section gives a detailed summary to describe the items mailed under the postage statement, including the type of mail (i.e., letters, flats or parcels), mailing date, weight of a single piece and the total weight, and number of containers.  This information is proprietary to the postal service in the first place and not good business practice to release as well as to TC Marketing relative to its client names and the type of business each client is processing.   Consequently, the information falls under Exemption 3.

**Section 3** - According to Defendant's Vaughn Index, this section lists the total postage amount for various categories of mail (A through D), which are itemized on the reverse side of the PS Form 3602.  This information could reveal the postage rate Defendant charges the mailer, if one were to take the total category postage amount and divide it by the total number of that type of mailing (as listed in Section 2).  The Court notes that in PS Form 3602-R, many of these rates are listed and

therefore appear to be standard, fixed rates.  Moreover, this blank PS Form 3602 is available to the public on the United States Postal Service's website.  However, some parts allow for a write-in "amount affixed."  It appears Defendant may sometimes offer a discounted rate to a permit holder, depending on the circumstances of the business arrangement.  Corporate businesses often do not reveal the rates they charge each and every one of their customers, for fear their competitors will offer lower rates.  It also may reveal the permit holder's profits on a mailing job, due to the discounted rate it received.  Therefore, the Court finds it would not be considered good business practice to disclose this information to the public, as Defendant is statutorily encouraged to operate more like a private business than a governmental agency.  Therefore, the Court finds the information in this section falls under Exemption 3.

**Section 4** - The Vaughn Index shows this section merely certifies that the information on the PS Form 3602 is accurate.  As it is merely a signature, the Court finds this information does not technically fall under Exemption 3, but is likely of no practical use to Plaintiff without the information in the other sections.

**Section 5** - According to Defendant's Vaughn Index, this section is completed by a qualified, USPS employee to certify the mailing has been inspected and properly prepared, paid for and also lists the total number of pieces, the total weight and total postage amount.  Again, given the total amount and total number of pieces, one could determine the postage rate charged (although not the individual rate by category).  However, this could still reveal whether the permit holder made

a profit on the mailing job and possibly the amount of the profit, which could be considered proprietary information.  While the Website requires listing the amount of the expenditure, it does not require listing the total number of pieces of mailing. Therefore, such profit information is not obtained via the Website Expenditure Reports.  The Court finds it would not constitute good business practice to disclose this proprietary information concerning one of Defendant's permit holders and this section therefore falls under Exemption 3.

**Section 6** - As explained by Defendant's Vaughn Index, this section lists the mailing information of the separate categories of mailings in order to compute the total amount of pieces, weight, postage price, etc.  More importantly, it gives a breakdown of the individual mailing rates Defendant charges the permit holder for the mailing job.  As explained in the discussion of Section 3, this is information that Defendant would not necessarily want the public to know, in order to keep it from its competitors. Also, this could potentially reveal TC Marketing's profit information, which is also information a business would not generally disclose regarding its customers.   Therefore, the Court finds disclosure would not amount to good business practice and the information accordingly falls under Exemption 3.

**b.     PS Form 1412**

As the Vaughn Index states, this is a form which shows the daily financial information for an individual Post Office unit.  This is certainly proprietary information and it would not constitute good business practice to disclose it to the public, as then Defendant's competitors would then be privy.  Further, as this form

cannot break down its information according to each individual permit holder, it is non-responsive to Plaintiff's request for "all PS Form 1412 for Permit 135." Therefore, it properly falls under Exemption 3.

### 2.   Exemption 4

Exemption 4 of FOIA is stated in **5 U.S.C. § 552(b)(4)**, provides that FOIA does not apply to matters that are "trade secrets and commercial or financial information obtained from a person and privileged or confidential."  However, because the Court finds that Defendant properly withheld Plaintiff's FOIA request under Exemption 3, it does not need to reach the issue of whether Exemption 4 also applies.

### 3.   Plaintiff's Objections to the Bernaky Declaration

In his "Preliminary" Response to Defendant's Motion for Summary Judgment, Plaintiff lists several objections to the Bernaky Declaration (Doc. 23, pp. 2-3).  Plaintiff first objects to the Bernaky Declaration in its totality on the basis that it allegedly violates **Rule 56(e) of the FEDERAL RULES OF CIVIL PROCEDURE**, because it is "not based on personal knowledge," but made from Postmaster Bernaky's review of official Postal Service records and his own personal knowledge and experience acquired throughout his career with the Postal Service (*Id*. at 2).  The Court finds Plaintiff's objection to be without merit.  The Court is satisfied that the information contained therein is from his personal knowledge or based on competent evidence.

The nature of a FOIA case at the summary judgment stage requires the

government agency to submit an affidavit or declaration, usually accompanied by a Vaughn Index, which sufficiently describes in detail the documents withheld, the exemptions justifying withholding those documents and gives reasons to logically demonstrate why those documents fall under the claimed exemptions.  As long as the declaration and Vaughn Index are not controverted by other evidence on the record or by a showing of agency bad faith, it will then be sufficient to justify a granting of summary judgment without the Court conducting an *in camera* review of the withheld documents.  **See Kimberlin, 772 F.2d at 210**.  Therefore, as long as an affidavit or declaration is not vague, sweeping, overbroad or only supported by legal conclusions, it will likely be considered sufficient.  **See Patterson v. I.R.S., 56 F.3d 832, 836 (7th Cir. 1995)**.

Affidavits or declarations submitted by a government agency in a FOIA do not also require personal knowledge of the search for responsive documents to a FOIA request.  In some instances, if the affiant or declarant is in a supervisory capacity, reviewing the results of a search performed by a subordinate, this will suffice.  **See, e.g., Patterson v. I.R.S., 56 F.3d 832, 840-41 (7th Cir. 1995)(Finding merit in case which held that an agency need not submit an affidavit by employee who actually conducted the FOIA search, reasoning that if affidavit or declaration was instead made by employee's supervisor, it would generally be sufficient if affidavit indicates search was reasonable and affiant was familiar with the responsive documents)(citing Maynard v. CIA, 986 F.2d**

**547, 560 (1st Cir. 1993);** *SafeCard***, 926 F.2d 1201;** *Meeropol v. Meese***, 790 F.2d 942, 951 (D.C. Cir. 1986);** *Gillin v. IRS***, 980 F.2d 819, 822 (1st Cir. 1992))**.    In this case, the Court finds that Postmaster Bernaky appears to be appropriately qualified to submit a declaration and that the declaration and Vaughn Index themselves are sufficient, indicating that a reasonable search was conducted, listing the documents withheld and providing detailed reasons therefor.  Further, his Declaration does indicate he performed the FOIA search himself.  Therefore, the Court also finds without merit Plaintiff's objection that the Bernaky Declaration is comprised of legal conclusions.  When reviewed in conjunction with Defendant's Vaughn Index (referenced by the Bernaky Declaration in paragraph 7), it provides the necessary elements required by case law.

Plaintiff also states several hearsay and authentication objections regarding the Bernaky Declaration.  Specifically, Plaintiff objects to Bernaky's recounting of TC Marketing's letter of objection regarding disclosure of its postage statements, as such is hearsay and the letter was not made part of the record. Secondly, Bernaky recounts a conversation with Joseph Sperlin, President of TC Marketing, in which he allegedly voiced concern about Plaintiff's FOIA request.

At this time, the Court finds it unnecessary to examine these objections, as the reasons for why the withheld documents fall under Exemption 3 do not rely upon whether Defendant's customer (TC Marketing) objects to the disclosure. Determining whether disclosure would be considered "good business practice" is

gauged from the perspective of Defendant operating as a private corporation would. If a private corporation would not normally reveal certain proprietary information, either about itself or its customers, this should also apply for the Postal Service. Certainly, knowing that the customer is not sanguine with the disclosure strengthens the business decision to withhold, but it is not the sole reason the Court finds Defendant justified in claiming Exemption 3 as a reason to deny Plaintiff's FOIA request. Therefore, an affidavit by Mr. Sperlin and/or a copy of TC Marketing's letter to Defendant objecting to the disclosure of its postage statements to Plaintiff is at this stage, unnecessary.

### III.  <u>CONCLUSION</u>

For the reasons discussed within this memorandum, Plaintiff's **Rule 56(f)** Motion to Conduct Discovery Prior to Ruling on Summary Judgment (Doc. 24) is **DENIED**. Further, the Court hereby **GRANTS** Defendant's Motion for Summary Judgment (Doc. 21), finding, in its discretion, that an *in camera* review of the withheld documents unnecessary, Defendant was justified in withholding the documents responsive to Plaintiff's FOIA request under Exemption 3, and that Plaintiff's objections to the Bernaky Declaration are without merit. The Clerk of the Court shall enter summary judgment in favor of Defendant and against Plaintiff.

**IT IS SO ORDERED.**

Signed this 5th day of July, 2006.

/s/     David  RHerndon
**United States District Judge**

Page 22 of 22